IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Cr. No. 20-CR-1954-KWR |
| **PETER GARCIA**, | ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTION TO THE PRESENTENCE REPORT**

The United States hereby responds to Defendant Peter Garcia's Sentencing Memorandum and objections to the Presentence report. (Doc. 60). The United States submits that the Presentence Report ("PSR") accurately calculates the Defendant's criminal history category and ultimate Sentencing Guideline range. The United States respectfully requests that this Court deny Defendant's objection to the PSR and impose a low-end guideline sentence. As grounds therefore, the United States submits the following:

**I.     PROCEDURAL HISTORY**

On October 28, 2020, the grand jury returned an Indictment, charging Defendant with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (Doc. 4). On March 30, 2022, Defendant pled guilty to the Indictment. (Doc. 49). On June 13, 2022, the United States Probation Office disclosed a presentence report (PSR), finding Defendant's total offense level to be 21 and Defendant's criminal history category to be VI, resulting in a guideline imprisonment range of 77 to 96 months. (PSR ¶¶ 31, 88). On July 24, 2022, Defendant filed a sentencing memorandum and

1

objection to the PSR asking the Court to impose a 36-month sentence, roughly a 50% reduction from Defendant's low-end guideline range. (Doc. 40). For the reasons stated herein, the United States opposes such a drastic reduction and recommends a low-end guideline sentence, followed by three years supervised release, and recommends that Defendant participate in the RDAP program and a vocational program.

## II. FACTUAL HISTORY

On September 21, 2020, an Albuquerque Police Department officer located a stolen vehicle leaving the Albuquerque Inn located at Central Avenue and Charleston. The driver, later identified as Defendant, drove south on Charleston at a high rate of speed. Officers followed the vehicle from a distance and kept visual while allowing additional officers to catch up and help with a felony stop of the vehicle. Defendant fled from police and drove at a high rate of speed, disobeyed traffic lights, disregarded other vehicles, and at times drove on the wrong side of the roadway until eventually crashing into a bike post near the Barelas Community Center. PSR ¶ 12.

Ultimately, an officer located the vehicle on Stover Ave SW where it turned south on 7th St SW and came to a dead end at the community center. Defendant fled from the driver's side of the stolen vehicle and ran toward the community center and out of view. An Officer heard a loud "banging sound" as if something landed on a metal roof. Multiple officers observed a partial view of Defendant running near and around the community center. Ultimately, Defendant ran from the community center to where Officers located him hiding in the bushes. PSR ¶ 13.

Upon a search incident to arrest, an Officer located a firearm magazine and several loose rounds of ammunition in Defendant's pocket. Officers retraced the area in which Defendant had fled. Based on the loud bang sound previously heard, officers checked the roof of 801 Barelas

and located a black in color, Smith and Wesson pistol. Officers later reviewed security footage, which showed Defendant throwing the firearm on to the roof of 801 Barelas. PSR ¶ 14.

### III. ARGUMENT

#### A. Defendant's Base Offense Level Is Correct

The USPO properly applied a four-level enhancement because Defendant committed other felony offenses while unlawfully possessing the firearms. Section 2K2.1(b)(5) provides a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense…" *Id*. "'Felony offense' as used in subsection (b)(5), means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." Application Note 7 to USSG § 2K2.1. 'In connection with' means that, at a minimum, the firearm had a 'purpose or effect with respect to' the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence." *United States v. Harper*, 466 F.3d 634, 650 (8th Cir. 2006) (*quoting United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997)). Possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense. *United States v. Walters, 269 F.3d 1207, 1219 (10th Cir. 2001)*; *United States v. Gross*, No. CR 16-0454 JB, 2016 WL 9021829, at *15 (D.N.M. Dec. 16, 2016); *United States v. Mack*, 343 F.3d 929, 936 (8th Cir. 2003); *see also United States v. Kanatzar*, 370 F.3d 810, 816 (8th Cir. 2004), (vacated on other grounds).

The facts of the instant case are directly on point with *United States v. Sanchez*, 22 F.4th 940 (2022), where the Tenth Circuit affirmed this Court's finding that the defendant's possession of the firearm had the potential to facilitate his possession of the stolen vehicle by emboldening

3

him to maintain that possession if confronted by law enforcement or the rightful owner. *Id.* at 942.

Here, the owner of the vehicle noticed the vehicle was missing on September 7, 2020, and reported the incident on September 20, 2021, when it was entered into NCIC as a stolen vehicle. On September 21, 2020, an officer located Defendant driving the stolen vehicle. After observing the law enforcement vehicle, Defendant fled at a high rate of speed, disobeyed traffic lights, ignored other cars on the road, and drove on the wrong side of the street. Defendant next continued to operate the car at a high rate of speed, and eventually wrecked the car. After wrecking the car, Defendant fled on foot, hid on a roof, and ultimately discarded the firearm. As in *Sanchez*, Defendant fled the scene and had the firearm on his person which supports a logical inference that Defendant possessed the firearm should he be confronted by the owner of the vehicle or law enforcement.

Defendant contends that he did not have knowledge that the vehicle was stolen because he borrowed the vehicle. There is no evidence before this court other than Defendant's self-serving statement that he borrowed the vehicle. And Defendant's conduct suggests otherwise. First, not only did Defendant attempt to disassociate himself with the firearm that he discarded from his person, but he also attempted to disassociate himself from the stolen vehicle by abandoning it after he crashed. Even if Defendant borrowed the vehicle from another drug user, any reasonable person would have been highly suspicious of accepting a vehicle from a known drug user that did not present Defendant a valid copy of the vehicle's registration or insurance.

Finally, even if the court finds Defendant did not have knowledge that he possessed a stolen vehicle, Defendant still committed a felony in connection with the possession of a firearm,

4

that being a violation of NM Stat § 30-22-1.1 (2018), Aggravated fleeing a law enforcement officer. Aggravated fleeing a law enforcement officer requires the following:

> A. Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act [29-20-1 through 29-20-4 NMSA 1978].
>
> B. Whoever commits aggravated fleeing a law enforcement officer is guilty of a fourth-degree felony.

*See* NM Stat § 30-22-1.1 (2018). As stated above, Defendant's flight from officers while driving the vehicle, his total disregard for traffic safety while traveling at a high rate of speed, his driving on the wrong side of the road, and ignoring traffic lights, while officers directed him to stop, illustrate that Defendant committed aggravated fleeing of a law enforcement officer. Like *Sanchez*, it is reasonable for this court to conclude that Defendant possessed the firearm for the purpose of evading law enforcement should they try to stop him for not having any valid registration or proof of insurance for the vehicle. Defendant's possession of the firearm emboldened his flight should he be confronted by law enforcement officers. Accordingly, the U.S.S.G. § 2K2.1(b)(6)(B) enhancement is applicable because Defendant possessed the firearm in connection with another felony offense. As such, the United States respectfully submits that the United States Probation Officer properly calculated Defendant's guideline range.

  B. <u>A guideline sentence is warranted</u>

  Congress directed sentencing courts to impose sentences "sufficient, but not greater than necessary," to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C)

to protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). To achieve the above purpose, courts have been directed to consider: (i) nature of the offense and the defendant's history and characteristics; (ii) the need for the sentence imposed (i.e. seriousness of the crime, adequate deterrence, public protection against further crimes by defendant, provide needed educational, vocational, medical, or other correctional treatment); (iii) the kinds of sentences available; (iv)guidelines; (v) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing; (vi) to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (vii) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

Here, Defendant seeks a downward variance from his sentencing guideline range of 77 to 96 months. (PSR ¶¶ 31, 88). Specifically, Defendant requests a sentence of 36 months, which is a 41- month reduction from his low-end guidelines. Defendant's request circumvents the policy favoring uniformity in sentences for defendants who commit similar crimes and does not reflect the seriousness of his offense.

The United States observes Defendant has an extensive criminal history starting at the age of twenty where he inflicted corporal injury on spouse. In that case, Defendant punched the victim six times with a closed fist and pushed the victim. PSR ¶ 34. Approximately just one year later, on April 23, 2004, Defendant received a second conviction for the same offense, but his conduct was more violent. There, Defendant verbally abused the victim. Defendant also grabbed the victim's hands and threw her on the bed and then squeezed her left breast. When the victim yelled for help, Defendant covered her mouth and nose, which caused her to not be able to

breath. Defendant then twice slapped the victim. When the victim asked her son to call the police, Defendant threw the victim to the bed and slapped and choked her. Defendant then placed his hand over the victim's nose and mouth. When the victim removed Defendant's hands, Defendant bit her face. PSR ¶ 35.

In 2010, Defendant received a third conviction for violent conduct. In that case, officers were dispatched in reference to a man armed with a knife. Apparently, Defendant had a disagreement with a neighbor and the neighbor reported that Defendant was upset and cursing at him. At one point the defendant went to his apartment and returned with a large knife, stating, "I'll f***ing kill you." Defendant eventually put the knife away and left the area. PSR ¶ 37.

Approximately three years later, in 2013, Defendant received his third corporal injury conviction, but this time it was for corporal injury to a child. PSR ¶ 38. In that case, Defendant struck a three-year-old child in the face because he was frustrated the child would not go to sleep. Officers observed four finger marks on the child's face and redness on the child's ear lobe. *Id.*

In 2018, like the present case, Defendant received a conviction for receiving stolen property. On January 30, 2018, officers observed a stolen vehicle. When officers attempted to stop the vehicle, the driver fled. Eventually, the vehicle stopped and both occupants, one being the Defendant, fled on foot. While fleeing, Defendant attempted to carjack another vehicle. Following his arrest, Defendant was found in possession of a stolen handgun. PSR ¶ 40.

Defendant also has a significant arrest history. He has two arrests for battery on a spouse, and battery of a household member. *See* PSR ¶¶ 50, 52. In 2009, Defendant admitted to "barely" hitting his girlfriend. PSR ¶ 50. In 2019, Defendant's ex-girlfriend reported defendant punched her in the mouth with a closed fist because she would not give him money. A witness

observed that the victim's mouth was bleeding, and she had a swollen lip with a laceration. PSR ¶ 52.

Finally in 2019, Defendant received a conviction for burglary of a vehicle, where defendant initially refused to follow commands of the officers. Defendant was also evasive and waked away from the officers. PSR ¶ 41.

Defendant continues to thumb his nose at the law and refuses to stop committing crimes. Defendant also is violent. Defendant needs a sentence that will instill in him a respect for the law and provide adequate deterrence. The United States cannot over-state the importance of deterring Defendant from ever possessing a firearm again. Between his persistent struggles with substance abuse, his poor performance on supervised release or probation, his consistent history of violence towards women, it now appears that only incarceration can provide adequate deterrence and protect the public as required by § 3553(a)(2). More specifically, a domestic abuser's possession of a firearm increases the risk of homicide by 500%[1]. From 1980 to 2008, nearly one out of every five murder victims were killed by an intimate partner.[2] But, as much as a statutory maximum sentence might address those goals, a guideline sentence is a superior way of making sure like defendants are treated alike nationwide as required by § 3553(a)(6). As such, the United States recommends a low-end guideline sentence. A low-end guideline sentence will help Defendant reflect on the seriousness of his crime and all other § 3553(a) factors in Defendant's case. Finally, Defendant has not presented any facts or circumstances that warrant in 44-month reduction from the low-end guidelines.

---

[1] National Coalition Against Domestic Violence, https://ncadv.org/STATISTICS.
[2] National Resource Center on Domestic Violence, https://vawnet.org/sc/scope-problemintimate-partner-homicide-statistics, citing a Cooper & Smith study from 2011 (link included).

## IV. CONCLUSION

WHEREFORE, The United States submits that in the final analysis a low-end guideline sentence of 77 months is a just sentence. In addition to 77-months custody, the United States respectfully requests the Court order Defendant to participate in the RDAP program, and a vocational training program so that Defendant will have the tools to become a productive member of society.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*__Electronically filed__*
EVA M. FONTANEZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY I filed the foregoing
pleading electronically through the
CM/ECF system, which caused counsel
of record for defendant to be served
by electronic means.

*__Filed Electronically__*
EVA M. FONTANEZ
Assistant U.S. Attorney